IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| MARK MOYERS, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:09-2983-JMC-JRM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| STATE OF SOUTH CAROLINA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, Mark Moyers ("Moyers"), was convicted of failing to file South Carolina income tax returns. He filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 17, 2009.[1] The case was automatically referred to the undersigned for pretrial purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 73.02(B)(2)(c) and (e).[2] Moyers filed an amended petition on December 17, 2009. Respondent filed a return and motion for summary judgment supported by copies of the state court record on May 3, 2010. Because Moyers is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on May 4, 2010 advising him of his responsibility to respond to the motion for summary judgment.

---

[1]On his petition, Moyers shows his address as a Post Office Box in Columbia, South Carolina.

[2]On the first page of the petition Moyers "gives notice that he does <u>not</u> (emphasis in original) consent to the use of a Federal Magistrate [Judge] for review of this petition." Moyers has no standing to object and his consent is not required for a referral of pretrial matters to a Magistrate Judge under § 636(b)(1)(A). His consent would be needed for a referral to "conduct any and all proceedings" under § 636(c).

1

Moyers filed a response and a motion for summary judgment on August 18, 2010. Respondent filed a Supplemental Return on November 22, 2010.  Moyers filed a "Mandatory Judicial Notice" on December 3, 2010 and a reply ("Petitioner's Return") to Respondent's Supplemental Return on December 16, 2010.

### Background and Procedural History

In December of 1997 the Bamberg County Grand Jury returned three indictments charging Moyers with knowingly and willfully failing to file South Carolina income tax returns for calendar years 1994, 1995, and 1996 in violation of S.C.Code Ann. § 12-54-40(b)(6)(c). (ROA 776-781).[3] Michael Chesser, Esquire represented Moyers in a week-long trial which resulted in convictions on each indictment.  Moyers' defense was that, after years of study of the tax system, he had concluded that he was not required to pay South Carolina income taxes.

The record shows that the trial judge ordered that Moyers be released on a secured appeal bond which required, *inter alia*, that he remain within the State of South Carolina. (Res.Mem., Ex. 17).[4]  Moyers was represented by the South Carolina Office of Appellate Defense on appeal. An Anders[5] brief was filed raising the following issues:

1.    The judge erred in holding that appellant was a taxpayer within the meaning of the tax statutes.

2.    The lower court did not have subject-matter jurisdiction to convict

---

[3]"ROA" is the record submitted to the South Carolina Court of Appeals on direct appeal.

[4]The bond was amended in September of 2004.  The order memorialized an earlier oral order permitting Moyers to leave the State of South Carolina.  Moyers was ordered to "keep the office of the Clerk of the South Carolina Supreme Court apprised of his current mailing address, email address, and telephone number." (Res.Mem., Ex. 18).

[5]Anders v. California, 386 U.S. 738 (1967).

2

appellant of violating S.C.Code Section 12-54-40.

(Res.Mem., Ex. 1).

Moyers' initial *pro se* brief presented arguments on Question 1, above, and also argued that the South

Carolina Department of Revenue ("DOR") had failed to exhaust administrative remedies before he

was indicted. (Res.Mem., Ex. 2). Moyers filed two additional *pro se* briefs advancing arguments that

DOR had failed to exhaust administrative remedies. (Res.Mem., Exs. 3 and 4). The appeal was

dismissed by the South Carolina Court of Appeals. *See* State v. Moyers, Unpub.Op.No. 2004-UP-409

(Ct.App. filed June 24, 2004). (Res.Mem., Ex. 5). Moyers filed a *pro se* motion for reconsideration

arguing the statute under which he was convicted was unconstitutional under the Constitution of

South Carolina, and the South Carolina Court of Appeals did not have subject matter jurisdiction to

hear his appeal. (Res.Mem., Ex. 6). The motion was denied on August 19, 2004. (Res.Mem., Ex. 7).

Moyers, represented by C. Rauch Wise, Esquire, then filed a petition for writ of certiorari in

the South Carolina Supreme Court raising the following issues:

1.   Did the trial court err in failing to quash the indictment on the ground
     that Act 201 of 1985 which enacted S.C.Code § 12-54-40 violated
     Article III, § 17 of the Constitution of the State of South Carolina in
     that Act 201 of 1985 contained more than one subject within the act?

2.   Did the lower court err in failing to quash the indictment and ruling
     that the state could still prosecute Dr. Mark Moyers for a violation of
     the statute when S.C. Code § 12-54-40 was repealed without a savings
     clause?

3.   Did the lower court err in failing to quash the indictment and holding
     that the income tax laws for the State of South Carolina were
     constitutional when the Constitution for the State of South Carolina
     passed in 1976 did not contain a provision authorizing the legislature
     for the State of South Carolina to pass an income tax when other type
     of taxes were specifically authorized?

4.   Did the lower court err failing to quash the indictment and holding

3

> that the Act 201 of 1985 was passed without an enacting clause in violation of Article III, § 16 of the Constitution of the State of South Carolina?

(Res.Mem., Ex. 8).

The petition was denied on February 15, 2006. (Res.Mem., Ex. 11). The Remittitur was returned on February 17, 2006. (Res.Mem., Ex. 12). The opinion of the South Carolina Court of Appeals and Remittitur were received by the Clerk of Court of Bamberg County on February 20, 2006. (Res.Mem., Ex. 13). On February 27, 2006, the Office of the Attorney General wrote the Solicitor of the Second Judicial Circuit advising her that the appeal had been completed. Further, the Solicitor was advised that Moyers was not in custody and requested that the Solicitor "ensure that the sentence is served." (Res.Mem., Ex. 14).

It is unclear what, if any, action was initiated to obtain custody of Moyers so he could serve the sentences imposed. There was no further activity (Moyers did not file an application for post conviction relief ("PCR")) until November 2, 2009, when Moyers filed a *pro se* "Motion for Permission to Motion this Court to Re-Open, Re-Consider, Rehear, and Rehear En Banc, this Appeal ab initio" in the South Carolina Court of Appeals. (Res.Mem., Ex. 15). The motion was construed as a motion to recall the Remittitur and denied on November 10, 2009. (Res.Mem., Ex. 16).

The present petition was filed one week later, November 17, 2009.

### **Grounds for Relief**

In the initial petition, Moyers stated he was entitled to a writ of habeas corpus on the following ground:

I.    "Unreasonable delay of appeal which effectuates a denial of die process and equal protection of the laws due to non-filing of the remittitur with the court thereby depriving Petitioner of finality of his first direct appeal, thus preventing him from access to state PCR and

4

state habeas corpus. Petitioner asserts that actual innocence is part of Ground One."

A.    He claims he is actually innocent because he claims he was not required to file a tax return. He claims that there has been an unreasonable delay because the remittitur has not been issued and asserts that he has thereby been deprived of an opportunity to file a state PCR application.

Moyers' amended petition states the following grounds:

I.    Unreasonable Delay of Appeal and/or of finality of Appeals.

A.    Wednesday December 2, 2009, Petitioner first received notice from the trial court that it possessed three remittiturs. They demonstrate that the appellate court issued its first order December 5, 2003, there has been no statement from the trial court as to when it received these remittiturs. In late 2003 trial judge who granted appeal bond request would no longer allow Petitioner to travel outside of South Carolina so upon returning to S.C. on January 4, 2004, Petitioner obtained a state PCR application filled it out and mailed it to the trial court in advance of December 2004. Trial court having not received the remittitur returned the state PCR application to Petitioner. Petitioner inquired as to whether he received the remittitur and he stated no. At some point after having been repeatedly told that the trial court doesn't have the remittitur Petitioner made examination of the public record at trial court and did not find the remittitur therein. Petitioner requested to be notified in writing whenever trial court received remittitur. Petitioner provided written notice of correct address to which such notice as well as the simultaneous expected notice of an appeal bond revocation hearing should be sent. No notice of an appeal bond revocation hearing has been received as of the filing of this Amendment # 1.

An appeal of two matters filed in the 5th Circuit Court of Common Pleas for Richland County have been unreasonably delayed since its filing in late 2000 or

5

early 2001 because the SCDOC has failed or refused to provide the requested and required transcripts. Grounds raised express repeal prior to prosecution commencement of prosecution and others. AND an appeal in the form of a petition to vacate a judgement which in not merely voidable but which in absolutely void ab initio, filed with the 2d circuit court of Common Pleas and/or Court of General Sessions which serves as an appeal has never been heard or otherwise been adjudicated, this is an unreasonable delay of appeal. Ground raised express repeal prior to commencement of prosecution.

## II. ACTUAL INNOCENCE

A.  Petitioner asserts that he was actually innocent of the allegation because there was no prescribing statute. (IT HAD BEEN REPEALED PRIOR TO THE ARREST OR SEARCH WARRANTS WERE ISSUED and therefore also before indictment 97-GS-05-292 was issued and before commencement of prosecution and there was no penalty statute (IT HAD BEEN EXPRESSLY REPEALED PRIOR TO COMMENCEMENT OF THE PROSECUTION/TRIAL) under which he could be charged and put upon trial. Even if there were a prescribing state and a penalty statute, Petitioner asserts that he was actually innocent of the allegations because he was not and could not be required by such statutes to file a return, because all the activities was done by right and none of them were done by privilege therefore those activities constitutionally could not be and therefore were not taxed. That he therefore could not have failed to file said return, and that even if he were required to file and he therefore failed to file , such failure was not wilful because he had a good faith belief that he was not required to file....

Additionally, approximately 6 to 9 months prior to his arrest April 22, 2997, Petitioner received a letter from SCDOR wherein they stated something to the effect of "We have not received tax returns for ... (certain years) ." Whereupon Petitioner promptly sent them a letter

6

wherein he stated something to the effect "I was not required to file any tax returns." This forthright letter was submitted to them in an effort to take advantage of the requirement that they must exhaust administrative remedies before proceeding to any court. They chose to ignore this requirement (yet another due process and equal protection violation). The next thing to happen after the letters , one from them and one from the petitioner was the arrest. Petitioner did not hide his assets , did not hide the fact that he did not file, did not hide the fact that he earned a livelihood for himself and his family with which to maintain their rights to life, liberty and the pursuit of happiness.

III.   NO ENABLING CLAUSE. 85 Act 201, created in violation of S.C. Constitution, Article III, § 16 in that it did not contain the exact enabling clause as required by the proper interpretation and construction of the meaning and effect of quotation marks found in statutes and construction.

    A.   Petitioner concedes this issue was not raised at trial or appeal, but should have been.

IV.   SINGLE-SUBJECT MANDATE VIOLATION by 85 Act 201 was unconstitutional in violation of South Carolina Constitution, Article III, § 17, in that it contained two or more subjects by containing both appropriations and nonappropriation subjects.

    A.   He asserts that trial counsel raised and preserved this issue. He claims appellate counsel failed to raise it.

V.   EXPRESS REPEAL PRIOR TO PROSECUTION, via 99 Act 114 § 4 S. 2 years prior to commencement of prosecution/trial of the only statute contained in the indictments , S.C. Code Ann. 12-54-40(b)(6)(c).

VI.   EXPRESS REPEAL OF 12-7-1640. 2 years prior to the issuance of the arrest warrant and the search warrant both of which were in part of 50% based on this expressly repealed statute. Also , S.C. Code § 12-7-1640 was expressly repealed prior to the indictment #97-GS-05-292 issued on December 1, 1997. Obviously, it was expressly repealed prior to the commencement of the prosecution. . . .

VII.   INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

A.   Appellate counsel filed and Anders brief while one of
the hottest legal issues of the decade, if not the century
was well preserved by trial counsel, to wit : 85 Act
201 violated the single subject mandate of the South
Carolina Constitution, Article III , § 17. Appellate
counsel pleaded in the Anders brief weaker issues
while ignoring obvious and stronger issues . He
neglected to plead 4th Amendment issues originally
suggested by initial appellate counsel , Aileen Clare,
who withdrew from representing Petitioner without
seeking or obtaining the necessary permission from the
Court. These were meritorious as well as obvious and
stronger issues to wit: that arrest and search warrants
were based upon two statutes, S.C. Code § 12-7-1640
and § 12-54-40 (b)(6)(c), both expressly repealed prior
to issuance of the warrants for arrest and to search ,
thus the evidence gathered from such a search was
fruit gained from a poisonous tree.

VIII.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL:

A.   Trial counsel failed to :

1. Appear at scheduled trial date certain not properly
prepared causing continuance, properly defend by
pleading defendant guilty to the first two elements of
the offense charged to the jury in opening statement
after defendant asked and prevailed upon the court to
order and ensure that trial counsel provide a full
defense on all three elements of the offense charged
and after trial judge did so order; trial counsel failed to
properly: object to arrest of jury pool member during
his voir dire, he failed to object at the time trial Judge
Keesley became a witness in the case by sua sponte
suddenly interjecting "Tennessee doesn't have an
income tax" during defendant's testimony about
having read the Jack Cole Co. v. McFarland, 206
Tenn. 694, 337 S.E.2d 453 (Tenn. 1960) case and
basing the formulation of his good faith belief s
thereupon. Failure to review with defendant material
used by the prosecutor at trial to which defendant
testified that he had not seen that under Brady and that

8

trial counsel also failed to object to the Brady violation at that time , failure to raise the issue of S.C. Const. Article III, §16 pretrial that 85 Act 201 did not contain mandated enabling clause as per quotation marks. And, appointed trial counsel , the defense attorney stated to defendant and admitted in open court and on the record to Judge Keesley that trial counsel Mr. Chesser, told defendant he would be better off being his own attorney (going pro se )than having himself (Mr. Chesser) as his attorney. And other issues which would have been properly developed in state PCR proceedings. Such an for example trial judge declared that Mr. Chesser was chosen and would not be replaced because he was "specially qualified" as a "tax attorney," however the fact that he had a master's degree in tax law only made it harder if not impossible for Mr. Chesser to explore, understand and advocate Petitioner's proper defense, which should have included at a minimum that the law did not require Petitioner to file and /or that he had a good faith belief that he was not required to file.

IX.    VIOLATION OF FEDERAL DUE PROCESS AND FEDERAL EQUAL PROTECTION, when viewing and comparing the actions of SC on the "single subject" mandate and the actions of the Illinois trial court and the Illinois Supreme Court ( which reviewed the questions de novo) which issued final order December 15, 2005, opinion Docket No. 98932, on a matter <u>Illinois v. Valdy Olender, et al</u> which concerned the same fact and law situation as the Petitioner's case as previously explained in the Petition to the SC Supreme Court (in the civil non-PCR matter) for a Writ of Certiorari first (cert. Denied February 2006) and then to the US Supreme Court ( in the civil state non-dramatically different results , the federal courts should step in to insure federal equal protection of the laws under the 14th Amendment and federal due process under the 5th and 14th Amendments.

A.    While this state civil non-PCR appeal was pending on Petition for Writ of certiorari filed with the SC Supreme Court the Illinois Supreme Court issued its December 15, 2005 opinion No. 98932 this conflict was brought to the attention fo the SC Supreme Court , the issue was there after raised in the U.S. Supreme Court in a petition for certiorari in the civil state non-PCR case that grew out of the criminal convictions

9

complained of herein.

X.   DEPRIVATION OF REMEDY, VIOLATION OF THE U.S. CONSTITUTIONAL GUARANTEE TO A "REPUBLICAN FOR OF GOVERNMENT." Citizens in our country have a right to challenge the lawfulness and the constitutionality of the APPLICATION of the so-called "income-tax" to activities which are not privileges as exemplified by the <u>Jack Cole Co. v. MacFarland</u> case out of the Tennessee Supreme Court in 1960, and the <u>Redfield v. Fisher</u> case out of the Oregon Supreme Court in 1934. Because this trial was fraught with many gross abuses the real question will not have to be answered by any court. The real question is whether any tax, and the so-called "income tax" in particular, while constitutional in and of itself may be lawfully be **applied** to activities which are done by right and which are not privileges. Possessing life, and liberty are not privileges they are rights just like the right to freedom of religion, and the right to freedom of the press. One must have the "right" to obtain a livelihood in order to maintain the right to "life" and in order to maintain or enjoy the right to "liberty." As *Jack Cole Co.* says the "mere earning and receiving of income is not a privilege which may be taxed." So, before the tax may apply there must be so privileged activity which has been taxed. In order to understand the issues properly one must first determine the nature of the income tax. Is it a direct tax or is it an indirect tax? Is it property tax? Is it a capitation tax? Is it an excise tax, a duty, or an impost? The remedy of challenging the application of any tax to activities has been and continues to be deprived of the people. Challenging the application to particular activities is not the same thing as challenging the constitutionality of the tax itself, the income tax may be constitutional while its application to activities which are done by right may be unconstitutional, it is getting this question answered that is being deprived of the people. This constitutes a deprivation of remedy and constitutes the violation of the constitutional guarantee the federal government will guarantee to the states a Republican form of government.

A.   The fact that this case can be disposed of by so many gross constitutional violations prevents the core question from being posed and answered.

XI.   VIOLATION OF THE **SEPARATION OF POWERS DOCTRINE**, in that where Executive branch proceeds under purported authority of statute after Legislature **expressly repeals** said statutes without a savings clause in the repealer and when prosecution is not begun until after express repeal, and where as here Judicial branch condones

10

Executive proceeding after **express repeal**, both Executive and Judicial branches impose themselves upon the exclusive province of Legislative branch, by mis-application and mis-interpretation in violation of the separation of powers doctrine. Effectively creating an unconstitutional delegation (or rather seizure) of Legislative authority.

    A.    After Legislature **expressly repealed** two statutes Executive and Judicial branches failed to heed the command of the people as expressed through their elected Legislative officials.

XII.    4 AMENDMENT, SEARCH TH AND SEIZURE VIOLATIONS, to wit: the arrest and search warrants both cited two statutes first, S.C. Code § 12-7-1640, **expressly repealed** about 2 years prior to issuance of warrants, and indictment #97-GS-05- 292, and second they also all cite S.C. Code § 12-54-40(b)(6)( c), **expressly repealed** without a savings clause in the repealer, subsequent to issuance of warrants but 2 years prior to commencement of prosecution or trial, thus evidence derived from such was fruit of a "poisoned tree." Subsequent admission of such evidence into evidence is a violation of the 4th Amendment of the U.S. Constitution. And it should have been objected to by trial and appellate counsel. These failures by trial and appellate counsel constitute ineffective assistance of counsel.

    A.    Arrest, search and indictment **occurred after express repeal** of 12-7-1640, and the information garnered, and evidence gathered from said search and arrest were used in prosecution which commenced **after express repeal of any and all statutes** cited as authority for the proceedings.

XIII.    **UNLAWFUL ARREST OF JURY** MEMBER.

    A.    Mr. Washington was arrested during his voir dire. Unlawful arrest of Mr. Antwan Washington, a black jury pool member, during his voir dire, within the Bar, on the record, in open court, in full view of the jury pool and already seated petit jury members. Also, the record was impermissibly altered by deletion as these events did not show up in the transcript. Unlawful striking of jury pool member or venireman, during his voir dire, by Sheriff at the command of New York State Arrest Warrant, rather than allowing him to be seated as a juror, or rather than allowing a strike by

either attorney for the prosecution, or the attorney for the defense, and trial counsel failed to object to this outrageous behavior in the conduct of the trial.

B. Unreasonable delay of appeal, delay of notice of finality of appeal, positive declarations of trial court clerk that *remittitur* had not been received, ineffective assistance of appellate and trial counsel.

XIV. **RETALIATION AGAINST A WITNESS**, TWO COUNTS, (1) COUNT ONE, 10 days after trial, Dr. Sam Covington, a witness for the defense was arrested and beaten so severely by agents of the S.C. Department of Revenue (SCDOR) that he was put into the intensive care unit (ICU) at the hospital where his arraignment and bail hearing took place. (2), COUNT TWO, to add to this in further retaliation against a witness, the judge handling Dr. Covington's trial practiced "recrimination" by telling his attorney that if he pleaded not guilty and took a jury trial and was found guilty the judge would give him 30 years in prison. Because of this fear he pleaded guilty and received a 10 month sentence.

A. Dr. Covington, a petite slight man of pleasant docile demeanor, was beaten, and stomped by men more than twice his size, and thereby put into ICU at the hospital because he attempted to serve as a substantial credible witness for the defense at trial. "Attempted" because the substantial part of his testimony was not allowed.

XV. JUDICIAL MISCONDUCT, THREE COUNTS, COUNT ONE. Trial judge became a witness and a prosecutor in trial when for no appropriate reason he blurted out "Tennessee does not have an income tax" interrupting defendant's testimony about his having read and studied Jack Cole Co. v. MacFarland, a unanimous Tennessee Supreme Court decision from 1960 which declares that "earning and receiving of income is not a privilege which may be taxed." COUNT TWO, trial judge cited an unpublished opinion State v. Addison, during a time that unpublished opinions were not allowed to be cited as precedent. Because of the Anastasoff case, and the national debate that followed its publication, this rule has since changed in the federal rules of procedure and it is destined to change in the state rules as well. COUNT THREE, trial court allowed the arrest of one of its jury members during the voir dire.

A.      Trial Judge Keesley testified to the jury that Tennessee
did not have an income tax and severely prejudice jury
against the defendant and the truthfulness of the
testimony Petitioner was providing them. By stating
what he did about the condition of the Tennessee
income tax, he effectively told the jury that the
defendant was a liar and that his testimony was false.
He impermissibly cited the unpublished <u>Addison</u> case
as a precedential authority at time when such was
prohibited by state and federal rules of court. Trial
judge in conspiracy with Sheriff facilitated the arrest
of jury member.

XVI.   PROSECUTORIAL MISCONDUCT, COUNT ONE. Prosecutor
commenced to mocking defendant during his testimony, which he
admitted and on the record apologized to court for doing, but he did
not apologize in front of the jury where the offense was committed.

A.      While Petitioner was testifying at trial, Mr. Secor
mocked him, grimacing and smiling as though said
testimony was "funny", stupid, inane, or untrue.
Defendant objected. Mr. Secor later apologized to the
court but not the jury, and not in view of the jury.

XVII.  PROSECUTORIAL MISCONDUCT, COUNT TWO. In closing
statement Prosecutor asked jury to convict defendant not because he
did not file a return as the purported charges supposedly require, but
because he, Petitioner, "made all that money right here in Bamberg
County" while slapping change, making a loud noise, in his right
pocket. Because this reason given to the jury was an impermissible
reason and makes of the sentences a "debtor's prison" this is
prosecutorial misconduct. It was also unnecessarily inflammatory.
Also, the comments made by Prosecutor improperly focused on the
fact that Defendant was not from that county or city, again issues
which the jury may not properly consider in the case. Trial counsel
failed to object contemporaneously, appellate counsel failed to find
this issue in the transcript and to raise it in his brief.

A.      petitioner was not charged with earning and receiving
money, he was charged with not filing a piece of paper
with his signature on it. Jury should not have been
made aware and any amounts of earned and received
income in excess of the purported and claimed
"statutory" minimum. Demonstrating amounts in

13

excess of that is unnecessarily inflammatory and only served to distract jury from the real question of the trial. Prosecutor slapping his right pants pocket making a loud "change" sound during closing arguments impermissibly inflammatory.

XVIII. VIOLATION OF OR MISAPPLICATION OF CLEAR FEDERAL LAW. U.S. v. Cheek, 498 U.S. 192 (1991), violations, to wit: trial court in an abuse of discretion refused to allow the jury to see the materials viewed by defendant and upon which he in good-faith relied in formulating his belief that he was not required to file a return.

A. Trial judge forbade jury from seeing most material which was viewed by Petitioner in forming his beliefs including the state statute that purportedly required him to file and Otto Skinner's books on the subject and many case law reports which Petitioner relied upon. In fact trial judge sealed record as to some of the evidence proffered in this regard.

XIX. **GROSS IMBALANCE OF RESOURCES** AND STAFF AVAILABLE TO DEFENSE COUNSEL AS OPPOSED TO PROSECUTION COUNSEL WHICH HAD SOME 15 STAFF ASSISTANTS including additional attorneys and paralegals, investigators, and secretaries.

A. Mr. Chesser was only one man he had no additional attorney help, no paralegals, no investigators, and no secretary, while Mr. Secor was from the state attorney general's office and he had some 15 staff assistants to handle all the material, do research, do investigations, make photocopies, and with which he could consult in formulating the presentation of his case.

XX. **WITNESS TAMPERING, to wit:** INTERNAL REVENUE SERVICE AGENT, JOHN DOE, DATING JANE DOE, MOTHER OF DEFENDANT'S YOUNG CHILDREN PRIOR TO ARREST and at other times pertinent to this case, and contributing to her choosing to file divorce and custody action as well as her providing coerced perjured testimony.

A. Jane Doe, mother of Petitioner's children had an IRS agent commence dating her, infiltrating defendants family prior to Petitioner's arrest and at other times

14

pertinent to this case and to her filing a divorce and custody action. The resultant fear of losing her children prompted her to provide perjured testimony concerning defendant's good-faith beliefs about whether he was required to file a return.

XXI. COERCED PERJURED TESTIMONY OF WITNESS FOR THE PROSECUTION, Jane Doe, mother of children of Petitioner, testified as to whether Petitioner held a sincere belief he was not required to file. IRS agent dated her before trial and her testimony therein.

A. Jane Doe falsely testified that her opinion was Petitioner did not have a sincere belief about not being required to file, she also was allowed to provide hearsay testimony about things said b y petitioner without objection from trial counsel for defense. But she being coerced, lied and discovery interrogatories and depositions plus granting her transactional and use immunity would likely cause her to reveal the truth. She had the motive of gaining security from the wrath of the IRS and or SCDOR and of gaining custody of Petitioner's children by delivering such perjured testimony. Also, while this witness' testimony on the question of Petitioner's belief was allowed, the testimony of two rebuttal witnesses was not allowed on this question. Trial counsel failed to object to this development, appellate counsel could see it in the record but failed to raise the issue.

XXII. IMPERMISSIBLE ALTERATION OF TRANSCRIPT BY DELETION. Voir Dire and arrest of Mr. Antwan Washington do not appear in the official transcript though transcriptionist was within 2 feet of the voir dire and Petitioner checked to see if she was listening and getting all of it for the record.

A. These events occurred yet did not appear in the official record of the transcript.

XXIII. DEFENDANT BROUGHT BEFORE JURY POOL AND PUBLIC IN JAIL CLOTHES.

A. Ineffective assistance of trial and/or appellate counsel, and due to unreasonable delay by trial court of

informing Petitioner of finality of appeal and due to positive declarations by trial court clerk that trial court had not received the *remittitur*.

XXIV. **DOORS TO COURT ROOM LOCKED** PREVENTING DEFENDANT FROM RECEIVING "PUBLIC" TRIAL TO WHICH HE WAS OF RIGHT ENTITLED.

A.    During the trial, doors to the courtroom were locked.

XXV. JUDICIAL MISCONDUCT BY STATE MAGISTRATE FIVE COUNTS.

A.    COUNT ONE, UNLAWFUL INITIAL BAIL SET AT 14 TIMES MAX. Defendant initially held by state magistrate to unlawful bail at 14 times the legal max upon arrest for single count, even though charged statute 12-7- 1640 expressly repealed at the time. COUNT TWO "probably cause" hearing to which petitioner entitled held after time required by law. COUNT THREE "probable cause" hearing held "off the record" in violation of nationwide requirement that ALL judicial hearings be "on the record" as all courts in America are "of record". COUNT FOUR "probable cause" hearing held without the required protections of assistance of counsel. COUNT FIVE, after release on initial bail after bail bond appeal hearing before Judge Martin, Petitioner was contacted by state magistrate *ex parte*. Petitioner was brought before magistrate, under threat of incarceration, again without the protections of a record, without assistance of counsel, without proper written notice, all in violation of due process protections of state and federal constitutions, and without notice to opposing party. Magistrate set bail bond at $140,000.00 cash no 10%, no property, in apparent unlawful attempt to collect a purported debt allegedly owed to SCDOR. At bail bond appeal hearing when asked by Judge Martin "How much does he owe you?", Mr. Secor responded after a 45 second delay, "We don't know." Not knowing at that time was tantamount to saying 'he doesn't owe us anything' and the charges should have been dismissed on the spot. Bail bond appeal attorney Mr. Comer failed to object or protect defendant at that time.

16

XXVI. RECRIMINATION. STATE AGENTS PUNISHED PETITIONER MERELY FOR CLAIMING HIS RIGHTS. Judge Rodney A. Peeples would openly declare in court that if "You plead not guilty and are found guilty, I will give you all the time the law allows. But if you plead guilty I'll try to follow the recommendation of the prosecutor resulting in less prison time."

A.      For example, Petitioner was given a far harsher sentence than any other person who pleaded guilty to the same charge anywhere in the state for 10 years on either side of the date of his conviction. Any time within a decade of Petitioner's sentence. This is the unlawful practice of recrimination as explained in Bar Trade Journal, the South Carolina Lawyer, March/April 2000 edition.

XXVII. FAILURE OF SCDOR TO EXHAUST ADMINISTRATIVE REMEDY.

A.      Months prior to April 22, 1997 arrest of Petitioner, the SCDOR wrote a letter to Petitioner saying in effect "E DO NOT HAVE ON FILE RETURNS FOR CERTAIN YEARS." Petitioner wrote back "I was not required to file a return." Further exchanges were required prior to going to court in order to exhaust the administrative remedy as required by statutory and case law.

XXVIII.      UNREASONABLE DELAY OF APPEALS, TO WIT: (1) SCDOR failed or refused to provide transcript so that Petitioner could perfect the appeal of two matters out of that agency, and (2) 2nd Judicial Circuit Court of General Sessions or Court of Common Pleas for Bamberg County failed to hear or adjudicate the Petition to Vacate a Judgment Which is Not Merely Voidable But Which is Absolutely Void *ab initio.*

A.      Petitioner timely filed the above referenced "appeals" and was prevented by causes not initiated by him from perfecting these appeals.

XXIX. BRADY VIOLATIONS BY PROSECUTION.

A.      They failed to disclose exculpatory evidence, to wit: a letter sent by Petitioner to the SCDOR in response to

17

their administrative inquiry where they stated they did
not have on file any tax returns for a given three years,
where Petitioner's letter stated that he was not required
to file any return. Had they provided this exculpatory
evidence Petitioner's trial attorney would have shown
it to the jury to demonstrate his goodfaith belief that he
was not required to file.

XXX. Judge cited an "unpublished case" (*Addison*) during time when that
was not supposed to be allowed.

XXXI. It was abuse of discretion to allow into evidence IRS documentation
when I was not accused of violating IRS statutes, rules or regulations.
Petitioner was accused of violating SCDOR purported statues, rules
and regulations. It was ineffective assistance of trial and appellate
counsel for it not to be raised by either of them.

XXXII. EXCESSIVE USE OF MOTIONS IN LIMINE TO CIRCUMVENT THE
COMMAND OF U.S. v. CHEEK.

## Discussion

### A.  "In Custody" Requirement

Respondent argues that the petition should be dismissed because Moyers is not "in custody"

as required by 28 U.S.C. § 2254(a).  However, a petitioner released on bond after conviction and

pending execution of sentence is "in custody."  Hensley v. Municipal Court, 411 U.S. 345 (1973).

In denying Moyers' motion for a preliminary injunction, the Honorable Cameron McGowan Currie,

United States District Judge, touched on the issue of his "fugitive status" and noted that "absent

further evidence from Respondent relating to what steps have been taken by state officials, if any,

to 'ensure that the sentence is served'" that she expressed no position with respect to Respondent's

argument. (Doc. No. 23).  Respondent has provided no further information.  Thus it would appear

that Moyers remains on bond and that he is "in custody" at this time.

18

**B.  Anti-Terrorism and Effective Death Penalty Act ("AEDPA") Statute of Limitations**

Respondents assert that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA.  The AEDPA became effective on April 24, 1996.  The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.  One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.  Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the Petitioner's conviction becomes final, not at the end of collateral review.  Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000).  In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction.

Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4ᵗʰ Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 196 F.3d 557, 561 (4ᵗʰ Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). "When a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a).  Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling.  Equitable tolling applies only in "those rare instances where–due to circumstances external to the [Petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [Petitioner]."  Harris, 209 F.3d at 330.  Under § 2244(d), the State bears the burden of asserting the statute of limitations.  Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling.  Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002).  To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing.  Pace, 544 U.S. at 418.  An attorney's mistake in calculating the filing date for a habeas petition relative to the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling.  Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.").  See also Harris, 209 F.3d at 331.

The first step in applying the AEDPA statute of limitations is determining when the relevant conviction became final.  Generally, under South Carolina procedure, when a petitioner files a direct appeal which results in the affirmation of conviction, the conviction becomes final upon the sending of the Remittitur by the appellate court and its receipt and filing by the Court of General Sessions.  See Walker v. Ozmint, 0:08-cv-00241-TLW (D.S.C.).

Throughout his pleadings Moyers has argued that the Remittitur was not received by the

Court of General Sessions, or if it was received, it was not properly filed. Moyers argues that this procedural flaw means that his appeal is not final, and also that he is precluded from filing a PCR application for this reason.

This issue is resolved by the affidavit of the Clerk of Court for Bamberg County attached to Respondent's Supplemental Return. The affidavit establishes that the Remittitur was received by the Clerk of Court, together with a cover letter from the South Carolina Court of Appeals (copy to Moyers and his counsel), stamped and filed on February 20, 2006. Therefore, based on this affidavit the undersigned concludes that Moyers' conviction became final on February 20, 2006. As noted above Moyers has never filed a PCR application so the tolling provisions of 28 U.S.C. § 2244(d)(2) are inapplicable. Moyers' motion to recall the Remittitur did not restart the statute of limitations clock. The present petition, filed November 17, 2009, is untimely. Notwithstanding Moyers' arguments that his appeal was never finalized, he has not shown that he is entitled to equitable tolling.

**C. Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**1.    Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties

of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A)  the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i)  there is either an absence of available State corrective process; or
> >
> > (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

23

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and <u>Blakeley v. Rabon</u>, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 *et seq.* A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. <u>Simmons v. State</u>, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. <u>Marlar v. State</u>, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[6] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim],

---

[6]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. <u>See</u> discussion below on procedural bypass.

the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted).  If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  *See* Rose v. Lundy, *supra*.

> ## 2.     Procedural Bypass[7]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts.  If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition.  The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion.   The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time.  Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines

---

[7]This concept is sometimes referred to as procedural bar or procedural default.  If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.     Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v.

26

Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4. Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) cert. denied, 508 U.S. 964 (1993). A petitioner must

show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

Respondent argues that only the claims raised by Moyers in his petition for writ of certiorari to the South Carolina Supreme Court are properly exhausted and before this Court. Those claims are represented by Grounds 2, 4 5 and 18 in Moyers' amended petition. The undersigned concludes that all remaining grounds in the amended petition are procedurally barred.

28

Moyers appears to argue "good cause" for failing to exhaust at least some of his claims based on the lack of finality of his state appeal as discussed above. However, the affidavit of the Clerk of Court attached to the Supplemental Return of Respondent refutes Moyers' arguments.

### D. State Law Claims

All the claims which Moyers presented to the South Carolina appellate courts involve interpretations of the law of South Carolina and its constitution. Respondent asserts that these claims are not cognizable because they involve issues of state law which should not be considered by a federal court. "Under 28 U.S.C. § 2241, a federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37 (1984). The statute specifies that a prisoner is entitled to a writ of habeas corpus when he is in custody "in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2241.

The Supreme Court reaffirmed this understanding of § 2241 in the case of Lewis v. Jeffers, 497 U.S. 764 (1990). "Because federal habeas corpus relief does not lie for errors of state law . . ., federal habeas review of a state court's application of [state law] is limited." In Estelle v. McGuire, 502 U.S. 62 (1991), the Court reiterated,

> [W]e reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. (Citations omitted).

Unless the petitioner can point to a specific constitutional protection which was denied him, or show that the error in state law substantially impaired his trial's fairness or resulted in a complete miscarriage of justice, he may not obtain relief, Chance v. Garrison, 537 F.2d 1212 (4th Cir. 1976), citing Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960).

29

**<u>Conclusion</u>**

Based on a review of the record, the undersigned concludes that the petition is untimely. Further, since the only claims he presented to the South Carolina appellate courts involve only matters of state law, Petitioner would not be entitled to relief on those claims. The other claims alleged in the petition are procedurally barred. Therefore, it is recommended that the Respondent's motion for summary judgment be **granted**, and Petitioner's motion for summary judgment be **denied**.

_____
Joseph R. McCrorey
United States Magistrate Judge

January 24, 2011
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

30

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).